1   Tanya E. Moore, SBN 206683
    MOORE LAW FIRM, P.C.
2   300 South First Street, Suite 342
    San Jose, California 95113
3   Telephone (408) 298-2000
    Facsimile (408) 298-6046
4   E-mail: service@moorelawfirm.com
            tanya@moorelawfirm.com
5
    Attorney for Plaintiff
6   Albert Dytch

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  ALBERT DYTCH,                      )  No.
                                       )
12              Plaintiff,             )  **COMPLAINT ASSERTING BREACH OF**
                                       )  **CONTRACT AND DENIAL OF RIGHT**
13       vs.                           )  **OF ACCESS UNDER THE AMERICANS**
                                       )  **WITH DISABILITIES ACT FOR**
14  HENRO LLC dba 900 GRAYSON; JAIK    )  **INJUNCTIVE RELIEF, DECLARATORY**
    KOO, Trustee of the KOO FAMILY TRUST; )  **RELIEF, DAMAGES, ATTORNEYS'**
15  JUNGSOON KOO, Trustee of the KOO   )  **FEES AND COSTS (ADA)**
    FAMILY TRUST;                      )
16                                     )
                                       )
17              Defendants.            )
                                       )
18                                     )
                                       )
19                                     )
                                       )
20                                     )
                                       )
21  _____)

22                          **I. SUMMARY**

23       1.      This is a civil rights action by plaintiff ALBERT DYTCH ("Plaintiff") for

24  discrimination at the building, structure, facility, complex, property, land, development, and/or

25  surrounding business complex known as:

26              900 Grayson
                900 Grayson Street
27              Berkeley, California 94710
                (hereafter "the Facility")
28

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against HENRO LLC dba 900 GRAYSON; JAIK KOO, Trustee of the KOO FAMILY TRUST; and JUNGSOON KOO, Trustee of the KOO FAMILY TRUST (hereinafter collectively referred to as "Defendants"), pursuant to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.     JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.     Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.     VENUE

6.     All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.     PARTIES

7.     Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.     Plaintiff suffers from muscular dystrophy. As a result, he is substantially limited in his ability to walk, has limited dexterity, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.     FACTS

9.     The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.     Plaintiff lives less than ten miles from the Facility and visited the Facility on or about June 23, 2023 to have lunch. During his visit to the Facility, Plaintiff personally

encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. These barriers include, but are not necessarily limited to, the following:

a) The main front entrance of the Facility is not accessible due to a large vertical height change along the route to it, and there is no signage posted there informing disabled customers that there is an alternative entrance. Having been to the Facility before, Plaintiff was aware that a more accessible entrance was located in the back of the Facility, though there was no directional signage to help him find the route.

b) The route to the back entrance was uncomfortably steep and difficult for Plaintiff to ascend and descend, and the back gate threshold had a large sudden height change which was jarring to Plaintiff as he wheeled over it when entering and exiting.

c) Plaintiff observed that the only accessible table in the patio dining area, where he was seated, only seats two people while other tables seat up to five. He also observed that the indoor dining area has an accessible table with several seating spaces, but the table is positioned such that the only wheelchair seating space out of the path of travel is at the end of the table, right next to the restroom. Additionally, the routes of travel through the dining area to the accessible table lack sufficient clear width. Accordingly, Plaintiff is deterred from visiting the Facility with more than one companion as he will not be able to comfortably sit with a larger group.

d) Plaintiff needed to use the restroom while at the Facility. To get there from the patio dining area, he had to ascend an excessively sloped ramp to enter the restaurant, which was difficult and frightening.

e) The restroom floor had a steep slope down to the sink and toilet, without enough clear and level space at the bottom for Plaintiff to use the toilet.

Additionally, the grab bars were not properly positioned which also prevented Plaintiff from using the toilet. As a result, Plaintiff could not use the toilet at the Facility and had to wait until his next destination to relieve himself, causing him frustration and discomfort.

f)      The lack of clear space within the restroom also prevented Plaintiff from turning his wheelchair around inside the room, so he could only exit by backing up the steep incline. He could not reach behind his wheelchair to open the door, and would have been trapped inside had his wife not been there to open the door for him.

g)      Plaintiff observed that the plumbing beneath the sink in the restroom was not properly insulated, which would pose a risk of burning his legs if he were to use the sink.

11.     There may exist other barriers at the Facility which relate to Plaintiff's disabilities, and he will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

12.     Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

13.     Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.     At all relevant times, Defendants have possessed and enjoyed sufficient control

and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.   Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

16.   Plaintiff previously brought suit against Defendants for similar claims arising out of his encounters with barriers to his access at the Facility in 2015. That lawsuit, N.D. Cal. 3:15-cv-04300-MEJ ("the Prior Action"), was resolved by settlement agreement entered into by Plaintiff and Defendants or about January 8, 2016. A true and correct copy of the settlement agreement ("Agreement") is attached hereto as Exhibit A.

17.   In settlement of the Prior Action, Defendants expressly agreed to "make each and every modification and accommodation to the Facility as set forth in [the Accessibility Survey report attached to the settlement agreement] such that each item complies with the new construction standards set forth in the 2010 Americans with Disabilities Act Standards for Accessible Design and California Code of Regulations, Title 24, Part 2 (Chapter 11B), with the exception of #5 in the Report, which shall comply to the maximum extent feasible." (Exhibit A, paragraph 2.2.) Pursuant to the Agreement, this work was to be completed by December 24, 2016.

18.     The Accessibility Survey Report attached to the Agreement listed at least 34 modifications which were to be completed by Defendants pursuant to the Agreement (including item #5, modification of the exterior accessible route to the patio entrance to remove excessive slopes, which was to be completed to the maximum extent feasible).

19.     Pursuant to paragraph 2.2 of the Agreement, Defendants should have removed all barriers from the Facility, including the barriers personally encountered by Plaintiff during his recent visit, by December 24, 2016.

20.     Defendants failed to comply with their obligations under the Agreement to remove barriers from the Facility, which caused Plaintiff to encounter barriers to his access at the Facility during his recent visit.

21.     The Agreement provides at paragraph 6.9 that, in the event that additional litigation is reasonably required to remedy a breach of the Agreement, the prevailing party in such enforcement action shall be entitled to recover from the non-prevailing party all reasonable costs, attorney's fees, and expenses incurred in such litigation.

## VI.     FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

22.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

23.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

24.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

//

//

*Dytch v. Henro LLC, et al*
Complaint

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

25.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

26.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

27.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

28.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

29.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

30.    The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

31.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

32.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

33.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

34.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

35.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

36.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

<u>Failure to Maintain Accessible Features</u>

37.     Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

38.     Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

39.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

40.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.     SECOND CLAIM

### Unruh Act

41.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

42.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

43.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

44.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

45.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

46.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

47.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

48.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

49.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

50.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

51.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

52.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

53.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX. FOURTH CLAIM

### Breach of Written Contract

54.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

55.     Plaintiff and Defendants entered into the written Agreement on or about January 8, 2016.

56.     Plaintiff fulfilled all his obligations under the Agreement.

57.     Defendants failed to fulfill their obligations under the Agreement by failing to remove barriers to access at the Facility, and as a proximate result of Defendants' breach of the Agreement, Plaintiff suffered additional discrimination by being once again denied full and equal access to the Facility on account of his disabilities during his visit to the Facility on June 23, 2023.

## X.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Statutory minimum damages under section 52(a) of the California Civil Code

1       according to proof.

2       3.      Declaratory relief finding that Defendants violated the ADA for the purposes of

3       Unruh Act damages.

4       4.      Attorneys' fees, litigation expenses, and costs of suit.[2]

5       5.      Interest at the legal rate from the date of the filing of this action.

6       6.      For such other and further relief as the Court deems proper.

Dated: 09/29/2023                 MOORE LAW FIRM, P.C.

                               */s/ Tanya E. Moore*
                               Tanya E. Moore
                               Attorney for Plaintiff
                               Albert Dytch

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Dytch v. Henro LLC, et al*
Complaint

# VERIFICATION

I, ALBERT DYTCH, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated:   09/29/2023              /s/ Albert Dytch
                                Albert Dytch

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                /s/ Tanya E. Moore
                                Tanya E. Moore, Attorney for
                                Plaintiff, Albert Dytch

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE IN FULL

This Settlement Agreement and Release in Full ("Agreement") is between Albert Dytch (hereinafter referred to as "Plaintiff") on the one hand; and Henro, LLC, dba 900 Grayson; Jaik Koo, Trustee of the Koo Family Trust; and Jungsoon Koo, Trustee of the Koo Family Trust (hereinafter collectively referred to as "Defendants") on the other hand.   Plaintiff and Defendants are collectively referred to as the "Parties."

## SECTION 1 – RECITALS

1.1    Plaintiff has filed a lawsuit, captioned *Albert Dytch v. Henro, LLC, et al.,* Case No. 3:15-cv-04300-MEJ, in the United States District Court for the Northern District of California (the "Action"), alleging that certain aspects of the facility known as 900 Grayson, located at 900 Grayson Street in Berkeley, California ("the Facility"), violate the accessibility requirements of Title III of the Americans with Disabilities Act ("ADA"), and applicable California state laws and regulations.

1.2    After considering the substantial expense and uncertainty associated with the Action, the Parties desire to settle all claims and disputes Plaintiff may have with the "Released Parties"[1] relating to the operation of the Facility for valuable consideration.   That desire manifests itself by concluding all pending litigation between the Parties relating to the Facility without admitting liability.

---

[1] The "Released Parties" shall collectively include Defendants, and any other entity (present, future, or former), known or unknown, whom Plaintiff might claim to be liable for the Facility. Examples of these entities include licensees, lessors, franchisees, franchisors, employees, attorneys, agents, officers, directors, successors, predecessors, subsidiaries, divisions, affiliates, individuals, firms, insurance companies, reinsurance companies and third-party administrators.

1.3     Therefore, without admitting liability, the Parties agree to resolve all of Plaintiff's claims and disputes against the Released Parties relating to the Facility in consideration for the following terms set forth in this Agreement.

## SECTION 2 – SETTLEMENT AND PAYMENT.

2.1     <u>Payment by Defendants to Plaintiff</u>.   Defendants shall pay to Plaintiff the total sum of $9,500.00 ("the Settlement Payment").   The Settlement Payment shall be made payable to the Moore Law Firm, P.C. Trust Account and tendered to the Moore Law Firm, P.C., 332 North Second Street, San Jose, California 95112 within thirty (30) days of the date Plaintiff provides his signature on this Agreement, via email, to counsel for Defendants, and shall be in the form of a cashier's check.

2.2     <u>Facility Renovations</u>.  Attached hereto and incorporated by reference is an Accessibility Survey prepared by ADA Consultant Services, dated October 28, 2015, and consisting of sixty (60) pages ("the Report"). Defendants hereby agree to make each and every modification and accommodation to the Facility as set forth in the Report, such that each item complies with the new construction standards set forth in the 2010 Americans with Disabilities Act Standards for Accessible Design and California Code of Regulations, Title 24, Part 2 (Chapter 11B), with the exception of item #5 in the Report, which shall comply to the maximum extent feasible.  These changes are to be completed within twelve (12) months of the Effective Date of this Agreement.

## SECTION 3 – PLAINTIFF'S RELEASE AS TO DEFENDANTS AND OTHERS

3.1 <u>Release in Full</u>.   In consideration for and subject to the Settlement Payment and the terms contained within this Agreement, Plaintiff, and those acting on Plaintiff's behalf (including heirs, beneficiaries, executors, administrators, successors, agents and assigns), shall forever release the Released Parties for all claims, currently known or unknown, foreseeable or unforeseeable, relating to the Facility – including the claims contained within the Action. This release includes attorneys' fees or costs incurred prior to the Effective Date of this Agreement, and any claims (known and unknown) against the Released Parties for acts and omissions that occurred at the Facility.

3.2 <u>Examples of Release</u>.  Example of claims released by Section 3.1 include physical or mental injury, pain and suffering, prejudgment interest, compensatory damages, punitive and exemplary damages, insurance and/or reinsurance coverage, benefits, premiums, or medical expenses for treatment Plaintiff may have received, or may receive in the future; this list is not exhaustive.  However, excluded from this Agreement are claims that cannot be waived by law.

3.3 <u>Civil Code Section 1542 Waiver</u>.  Plaintiff expressly waives the rights provided under California Civil Code Section 1542, which states that:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR.

Plaintiff understands the significance and consequences of a California Civil Code Section 1542 waiver, and hereby assumes full responsibility for any damages or losses caused by this waiver.

3.4   <u>Covenant Not to Sue</u>.   Plaintiff, and those acting on behalf of Plaintiff (including heirs, beneficiaries, executors, administrators, successors, and assignees), agree not to file lawsuits or administrative complaints for any claims related to the Facility, which occurred or could have been brought prior to the execution of this Agreement.   Any lawsuit or administrative complaint that violates this section shall constitute a breach of this Agreement, and entitle the Released Parties to all relief available under the law.

3.5   <u>Dismissal of the Action</u>.   Within five (5) business days of receiving the Settlement Payment, Plaintiff's counsel shall file the necessary documents to effect a dismissal of the Action with prejudice, or shall prepare and circulate a stipulation for dismissal of the Action with prejudice to any party whose consent to dismissal is required pursuant to Fed. R. Civ. P. 41.

3.6   <u>Full and Knowing Waiver</u>.   Each Party consulted with an attorney, and executed this Agreement with a complete understanding of its legal effect. The Parties understand that executing this Agreement expressly waives all of the aforementioned rights, and binds them to the terms of this Agreement.

3.7   <u>Scope</u>.   The terms of this Agreement shall only apply to the Facility.

## SECTION 4 - WARRANTIES

4.1     Capacity of the Parties.  The Parties warrant that each has the full power, capacity, and authority to enter into this Agreement, and that no claim, right, demand, action, or cause of action, relating to the Facility was assigned to any entity who is not a Party to this Agreement. Further settlement agreements are not necessary to resolve any of the claims (actual or potential) relating to the Facility – including the ones contained within the Action.

4.2     Binding on Parties.  The Parties warrant that if the facts, upon which this Agreement is based, are found to be different from the facts now believed to be true, this Agreement will remain binding and effective.  The Parties expressly accept, and assume the risk of, the possibility that differences exist, and agree that this Agreement shall remain binding and effective.

4.3     Other Costs and Attorneys' Fees.   Plaintiff and the Moore Law Firm, P.C. warrant that no counsel (other than the Moore Law Firm, P.C.) is entitled to the Settlement Payment, and Plaintiff will indemnify Defendants for their attorneys' fees and costs should any such claim be made.

4.4     Voluntary Action by Parties.   The Parties enter into this Agreement knowingly and voluntarily, in order to avoid the expense of continued litigation.

## SECTION 5 – DENIAL OF LIABILITY

5.1     Denial of Liability.   The Released Parties deny all allegations contained in the Action.  The Parties expressly represent, understand and assent that this Agreement is a compromise of disputed claims, and shall not be

construed as an admission of liability by the Released Parties.  Nor shall any acts, omissions, or statements by the Parties be construed as an admission of liability.   Nothing contained in this Agreement shall be admissible evidence in any judicial, administrative, or other legal proceeding (other than a proceeding for breaching this Agreement).

### SECTION 6 – GENERAL PROVISIONS

6.1    <u>Entire Agreement</u>.  This Agreement constitutes the entire Agreement by the Parties hereto with respect to all of the matters discussed herein, and supersedes all prior or contemporaneous discussions, communications, or Agreements, expressed or implied, written or oral, by or between the Parties.

6.2    <u>Governing Law</u>.    This Agreement shall be interpreted and governed according to the laws of the State of California.

6.3    <u>Binding on Successors</u>.  The provisions of the Agreement shall be binding upon, and shall inure to the benefit of the successors, assigns, heirs, executors, and administrators of the respective Parties.

6.4    <u>No Amendment Without Writing</u>.  The Parties agree that this Agreement shall not be amended, unless that amendment is made in writing and signed by each Party.

6.5    <u>Waiver</u>.    The waiver of a breach of this Agreement shall not be construed as a waiver of any subsequent breach.

6.6    <u>Severability</u>. The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found unenforceable, the remaining paragraphs and provisions shall remain in full effect.

6.7   <u>Construction</u>.        The  Parties  acknowledge  that  their  respective attorneys have reviewed and revised this Agreement, and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

6.8   <u>Effective Date</u>.  This Agreement shall become effective and enforceable on the date executed by Plaintiff.

6.9   <u>Attorney Fees for Enforcement of Agreement.</u>  The Parties agree that no individual, entity, or Party shall be deemed to be the prevailing party in this Action as this Agreement is a compromise of disputed claims and shall not be construed as an admission or indication of any liability, fault, or noncompliance by the Defendant and/or Released Parties. However, in the event that future and additional litigation is reasonably required by the Parties,  either  individually  or  collectively,  to  remedy  a  breach  of  this Agreement and/or to enforce the Parties' respective rights pursuant to this Agreement, the prevailing party or parties as determined by a court of competent jurisdiction shall be entitled to recover from the non-prevailing party  as  also  determined  by  a  court  of  competent  jurisdiction  all reasonable costs, attorneys' fees, and expenses reasonably incurred in such future and additional litigation.

6.10  <u>Counterparts</u>.  This Agreement may be executed in counterparts, and authentic facsimile or digitally scanned signatures shall be deemed to be original signatures for all purposes.

6.11   <u>Confidentiality</u>.  This Agreement, and the terms and conditions set forth herein, shall be strictly confidential, and shall not be disclosed voluntarily to any third Party other than the respective officers, directors, shareholders, members, managers, property managers, employees, attorneys and accountants of any Party hereto.   Notwithstanding the foregoing, the terms and conditions of this Agreement may be disclosed: (a) to a court or governmental body having jurisdiction to require and actually requiring such disclosure; (b) as may be required by law; (c) as a defense to another similar action; (d) to any other party to the Action; (e) to the spouse of any natural party hereto; or (f) in any action or proceeding to enforce this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date specified below.

Dated: _12/24/15_                     _____
                                       Plaintiff Albert Dytch


Dated: _____              _____
                                       Defendant Henro, LLC, dba 900 Grayson


Dated: _1/8/16_                      _____
                                       Defendant Jaik Koo, Trustee of
                                       the Koo Family Trust


Dated: _1/8/16_                      _____
                                       Defendant Jungsoon Koo, Trustee of
                                       the Koo Family Trust


Page 8 of 8

6.11   <u>Confidentiality</u>.  This Agreement, and the terms and conditions set forth herein, shall be strictly confidential, and shall not be disclosed voluntarily to any third Party other than the respective officers, directors, shareholders, members, managers, property managers, employees, attorneys and accountants of any Party hereto.  Notwithstanding the foregoing, the terms and conditions of this Agreement may be disclosed: (a) to a court or governmental body having jurisdiction to require and actually requiring such disclosure; (b) as may be required by law; (c) as a defense to another similar action; (d) to any other party to the Action; (e) to the spouse of any natural party hereto; or (f) in any action or proceeding to enforce this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date specified below.

Dated: _12/29/15_         _____

                                Plaintiff Albert Dytch

Dated: _1/7/15_          _____

                                Defendant Henro, LLC, dba 900 Grayson

Dated:_____       _____

                                Defendant Jaik Koo, Trustee of
                                the Koo Family Trust

Dated:_____       _____

                                Defendant Jungsoon Koo, Trustee of
                                the Koo Family Trust

# ADA CONSULTANT SERVICES

**6207 South Walnut Street, Suite 800**
Loomis, California 95650
Tel:  916-660-1916
Fax:  916-660-9378

## Accessibility Survey

2013 California Building Code and 2010 ADA Standards

Project Name:        Henro LLC

Project Location:    900 Grayson Street
                     Berkeley, California

Date of Inspection:  October 28, 2015

Contact Person:      Cris C. Vaughan

CASp Inspector:      **Jason A. Vaughan**

Inspector's #:       **CASp #-608**

Dear Client:

A site accessibility evaluation of 900 Grayson, Berkeley, California was completed on October 28, 2015. The property is a single story buildings which was constructed before 1992. The areas evaluated included the accessible route of travel from the public sidewalk, accessible entrance, accessible counters, accessible seating, and accessible restroom. There is no off street parking at this facility. No evaluation of the public right-of-way was made as part of this evaluation. There was also no review of or efforts to identify any public funding sources which may or may not affect the compliance standards applicable to the property. No alteration history was reviewed.

Compliance with applicable state and federal access laws requires facilities which existed as of January 1992 to remove architectural barriers to access. A facility built since January 1992 must generally be built in accordance with applicable accessibility requirements at the time of construction. In the event there has been any alteration, remodel or renovation to the public portion of a facility, additional obligations may apply which would not otherwise be applicable at the time of construction. Restriping of the parking lot is considered to be an alteration which triggers compliance with the accessibility requirements for the parking lot at the time of restriping. New and existing facilities must also remove architectural barriers to access based on the amendments to the accessibility requirements of the Americans with Disabilities Act (ADA) which became effective March 15, 2012.

It is important to note that the ADA and its implementing regulations and guidelines create an affirmative duty to remove barriers to access. In contrast, the CBC generally only requires improvements to access when an alteration is made to a facility. The obligation to provide accessibility to this property requires that the most restrictive or stringent provisions of either the ADA or CBC be met.

This evaluation identified items that do not comply with current accessibility requirements of the ADA and the CBC. Alterations to comply with the applicable accessibility requirements are recommended to be undertaken at this time regardless of whether such accessibility requirement could arguably be delayed under the CBC until some other alteration to the property triggers CBC compliance. This recommendation is based upon the fact that there continues to be a significant number of accessibility lawsuits filed in Northern California, and recent revisions to the ADA became effective March 15, 2012.

Barrier removal is required when "readily achievable." A determination of whether removal of a particular barrier is readily achievable must be made on a case-by-case basis. Removal of a barrier is considered to be readily achievable when such removal is easily accomplished without too much difficulty or expense. All barriers identified in this evaluation report that are readily achievable should be removed as soon as possible. Unless otherwise indicated, no evaluation has been made in this report as to whether or not removal of a particular barrier is readily achievable. A plan for the removal of barriers over a reasonable period of time should be developed.

Six (6) priorities are recommended by the Title III regulations for planning readily achievable barrier removal projects:

    Priority 1: Accessible entrance.
    Priority 2: An accessible route to the altered area.
    Priority 3: At least one (1) accessible restroom for each sex or a single unisex restroom.
    Priority 4: Accessible telephones.
    Priority 5: Accessible drinking fountains.
    Priority 6: When possible, additional accessible elements such as parking, storage, and alarms.

To assist businesses with complying with the ADA, Section 44 of the IRS Code allows a tax credit for small businesses and Section 190 of the IRS Code allows a tax deduction for all businesses.

A tax credit is available to businesses that have total revenues of one million dollars ($1,000,000.00) or less in the previous tax year or thirty (30) or fewer full-time employees. This credit can cover fifty percent (50%) of the eligible access expenditures in a year up to ten thousand, two hundred fifty dollars ($10,250.00) (maximum credit of five thousand dollars ($5,000.00)). The tax credit can be used to offset the cost of undertaking barrier removal and alterations to improve accessibility, providing accessible formats such as Braille, large print and audio tape, making available a sign language interpreter or a reader for customers or employees, and for purchasing certain adaptive equipment.

The tax deduction is available to all businesses with a maximum deduction of fifteen thousand dollars ($15,000.00) per year. The tax deduction can be claimed for expenses incurred in barrier removal and alterations. See your accountant for more information.

In addition to removal of identified barriers, the ADA requires an implementation of policies, procedures and training so that employees and operators of the business are aware of requirements to make and maintain property accessibility for persons with disabilities. Development of such policies, procedures and training are beyond the scope of this evaluation; however, it is recommended that these items be implemented as soon as possible.

In order to maintain the property in an accessible condition, periodic maintenance will be required of the accessible components of the property. These accessible components include routes of travel from the public right-of-way, parking lot markings, parking lot signage, door operation, door landings, route of travel and clear space requirements in the public portions of the property. It is recommended that periodic review be undertaken to ensure all accessible components are in compliance with applicable accessibility requirements.

Please feel free to contact this office to discuss any aspect of this report. Additional services beyond the scope of this evaluation report are available. Such services would include onsite meetings with contractor(s), review of plans, review of completed work and all other consultation services as necessary to bring the property into compliance and maintain compliance with all accessibility requirements.

ADA CONSULTANT SERVICES

**CRIS C. VAUGHAN**

- **Architectural plans are recommended to be provided with proposed dates for barrier removal.**

- **Proper permits and plans shall be obtained for barrier removal per local building codes.**

- **ADA policy and procedures shall be provided for staff with a maintenance check list.**

- **This Site meets "Inspected by a CASp Status" when approved dates of repair are provided.**

**§ 36.104 Definitions.**

For purposes of this part, the term "readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable factors to be considered include:

(1) The nature and cost of the action needed under this part;

(2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;

(3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;

(4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and

(5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

What DOJ states on prioritization:

**§ 36.304 Removal of barriers.**

(c) Priorities. A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

(1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.

(2) Second, a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables, providing Brailled and raised character signage, widening doors, providing visual alarms, and installing ramps.

(3) Third, a public accommodation should take measures to provide access to restroom facilities. These measures include, for example, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, providing accessible signage, widening of toilet stalls, and installation of grab bars.

(4) Fourth, a public accommodation should take any other measures necessary to provide access to the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

NOTICE TO PRIVATE PROPERTY OWNER/TENANT:

YOU ARE ADVISED TO KEEP IN YOUR RECORDS ANY WRITTEN INSPECTION REPORT AND ANY OTHER DOCUMENTATION CONCERNING YOUR PROPERTY SITE THAT IS GIVEN TO YOU BY A CERTIFIED ACCESS SPECIALIST.

IF YOU BECOME A DEFENDANT IN A LAWSUIT THAT INCLUDES A CLAIM CONCERNING A SITE INSPECTED BY A CERTIFIED ACCESS SPECIALIST, YOU MAY BE ENTITLED TO A STAY (TEMPORARY STOPPAGE) OF THE CLAIM AND AN EARLY EVALUATION CONFERENCE.

IN ORDER TO REQUEST THE STAY AND EARLY EVALUATION CONFERENCE, YOU WILL NEED TO VERIFY THAT A CERTIFIED ACCESS SPECIALIST HAS INSPECTED THE SITE THAT IS THE SUBJECT OF THE CLAIM. YOU WILL ALSO BE REQUIRED TO PROVIDE THE COURT AND THE PLAINTIFF WITH THE COPY OF A WRITTEN INSPECTION REPORT BY THE CERTIFIED ACCESS SPECIALIST, AS SET FORTH IN CIVIL CODE SECTION 55.54. THE APPLICATION FORM AND INFORMATION ON HOW TO REQUEST A STAY AND EARLY EVALUATION CONFERENCE MAY BE OBTAINED AT http://www.courtinfo.ca.gov/selfhelp/.

YOU ARE ENTITLED TO REQUEST, FROM A CERTIFIED ACCESS SPECIALIST WHO HAS CONDUCTED AN INSPECTION OF YOUR PROPERTY, A WRITTEN INSPECTION REPORT AND OTHER DOCUMENTATION AS SET FORTH IN CIVIL CODE SECTION 55.53. YOU ARE ALSO ENTITLED TO REQUEST THE ISSUANCE OF A DISABILITY ACCESS INSPECTION CERTIFICATE, WHICH YOU MAY POST ON YOUR PROPERTY.



900 Grayson Street, Berkeley, California

This inspection was of the exterior and interior areas open to the public. Tools used were a twenty-four inch (24") Stabila electronic level calibrated prior to inspection, twenty-five foot (25') tape measure, two sixteen foot (16') tape measures, four cones, door pressure gauge, change in level gauge, note pad, FUJIHILM camera and writing utensil. This survey does not include employee work areas

Twelve (12) months is reasonable time to complete the removal of all barriers listed below.

### Site Entrance Signage
### Refer to Section 2, Pages 12 – 13

1) Provide directional signage at non-accessible entrance door directing persons to the accessible patio entrance. See details and photographs in Section 2 of this report.

2) Install directional signage where the accessible route of travel leaves the public sidewalk. See details and photographs in Section 2 of this report.

3) Mount directional signage outside of any route of travel with the bottom of the sign at forty inches (40") minimum above the finished floor or ground. See details and photographs in Section 2 of this report.

### Exterior Accessible Route to Patio Entrance
### Refer to Section 3, Pages 14 – 24

4) Provide an accessible route of travel from the public sidewalk to the patio entrance. See details and photographs in Section 3 of this report.

5) To the maximum extent feasible modify existing accessible route to be a maximum of eight-point-three-three percent (8.33%) slope in the direction of travel. If direction of travel slope can not be modified to eight-point-three-three percent (8.33%) maximum, post a sign identifying the direction of travel slope. See details and photographs in Section 3 of this report.

6) Since the driveway area servers as a vehicle route for deliveries and storage, provide handrails on one side of the ramp with the top of the gripping surface a minimum of thirty-three inches (33") and a maximum of thirty-six inches above the finished surface. Handrails are to be extend a minimum of twelve inches (12") above the level landings and be returned. See details and photographs in Section 3 of this report.

7) Provide a minimum two inch (2") curb or barrier on the hand rail side of the ramp. See details and photographs in Section 3 of this report.

8) Provide a minimum seventy-two inch (72") landing at the bottom of the accessible ramp with a maximum two percent (2%) slope in any direction. See details and photographs in section 3 of this report.

9) Provide a minimum sixty inch (60") landing at the top of the accessible ramp with a maximum two percent (2%) slope in any direction subject to city sidewalk restrictions. See details and photographs in section 3 of this report.

10) Modify or replace all locations on the accessible route of travel with more than one-half inch (½") with vertical change between one-quarter inch and one-half inch (¼" and ½") beveled at 1:2 (50%) maximum gradient. See details and photographs in Section 3 of this report.

11) *Provide International Symbol of Accessibility (ISA) signage on the fence to the left side of gate into the patio seating area. See details and photographs in Section 3 of this report.*

12) *Provide an accessible route through the patio seating area a minimum forty-four inches (44") width with a maximum two percent (2%) cross slope. See details and photographs in Section 3 of this report.*

## Accessible Doors
### Refer to Section 4, Pages 24 – 30

**Note:** *Only the patio entrance door into the main restaurant will be accessible.*

13) *Provide a minimum sixty inch by sixty inch (60" by 60") accessible entrance door landing which has no more than a two percent (2%) maximum slope in any direction that extends twenty-four inches (24") minimum beyond the strike side of the door. See details and photographs in Section 4 of this report.*

14) *Modify the existing door thresholds to not exceed one-inch (½") maximum height above the finished surface on either side, beveled between one-quarter inch (¼") and one-inch (½") at 1:2 (50%) maximum gradient. See details and photographs in Section 4 of this report.*

15) *Provide a minimum eighty inches (80") vertical clearance and a minimum thirty-two inches (32") clear width at the accessible doors. See details and photographs in Section 4 of this report.*

16) *Relocate existing door (building entrance door and restroom door) hardware to be centered between thirty-four inches and forty-four inches (34" – 44") above the finished floor. See details and photographs in Section 4 of this report.*

17) *Provide kick plates on the push side of all accessible doors (building entrance door and restroom door) so the bottom ten inches (10") of doors have a smooth uninterrupted surface. See details and photographs in Section 4 of this report.*

18) *Remove curtain and relocate extra chairs and highchairs to provide a clear space on the pull side of the restroom entrance door that is a minimum sixty inches (60") deep. See details and photographs in Section 4 of this report.*

## Interior Route
### Refer to Section 5, Pages 31 - 33

19) *Rearrange tables to provide a minimum forty-four inches (44") wide route throughout the interior seating area. See details and photographs in Section 5 of this report.*

## Accessible Counters & Reach Ranges
### Refer to Section 6, Pages 34 - 40

20) *Provide a minimum thirty-six inch (36") long counter at the cashier counter, which is to be a maximum of thirty-four inches (34") high. See details and photographs in Section 6 of this report.*

21)   *Provide proper reach ranges at all dispensers or vending controls of forty-eight inches (48") above finished floor if new since March 15, 2012 or if only forward approach and fifty-four inches (54") maximum above finished floor if not changed since March 15, 2012 and has parallel approach, if dispenser is no more than ten inches (10") from front of counter. At least fifty percent (50%) of each type of item shall be within reach range. See details and photographs in Section 6 of this report.*

### ***Accessible Restroom***
### ***Refer to Section 7, Pages 41 – 55***

**Note:** Current restroom configuration includes three load bearing walls making an expansion of the size of the restroom at least difficult, if not technically infeasible. The following recommended alterations are made to improve access to the maximum extent feasible.

22)   *Lower door hardware on both sides of door to thirty-four to forty-four inches (34" – 44") on center above the finished floor. See details and photographs in Section 7 of this report.*

23)   *Install proper unisex door and wall mounted signage. See details and photographs in Section 7 of this report.*

24)   *Replace existing residential toilet seat with a commercial toilet seat. Top of now commercial toilet seat is to be between seventeen inches to nineteen (17" – 19") above the finished floor. See details and photographs in Section 7 of this report.*

25)   *Install toilet paper dispenser on side wall with dispenser located seven to nine inches (7" – 9") to centerline from the front of the toilet. See details and photographs in Section 7 of this report.*

26)   *Install rear grab bar to extend a minimum of forty-two inches (42") from the side wall and begins within six inches (6") of the side wall with a minimum one and one-half inch (1½") gap between the grab bar and the toilet The top of the surface of the rear grab bar shall be between thirty-three and thirty six inches (33" – 36") above the floor. See details photographs in Section 7 of this report.*

27)   *Replace existing side grab with a grab bar to extend a minimum of fifty-four inches (54") from the rear wall, twenty-four inches (24") beyond the front of the toilet and so side grab bar begins within twelve inches (12") of the rear wall. Provide a minimum one and one-half inch (1½") gap between the grab bar and the toilet paper dispenser. See details and photographs in Section 7 of this report.*

28)   *Lavatory will remain due to limited clear width of the restroom. See details and photographs in Section 7 of this report.*

29)   *Relocate paper towel dispenser to forty inches (40") maximum above the finished floor to highest operable part. See details and photographs in Section 7 of this report.*

30)   *Provide behind lavatory mirror with bottom of reflective surface at forty inches (40") maximum above the finished floor or install additional mirror at a different location with bottom of reflective surface thirty-five inches (35") maximum above the finished surface. See details and photographs in Section 7 of this report.*

**_Accessible Seating_**
**_Refer to Section 8, Pages 56 – 58_**

31) *Provide accessible seating at one of each type of table and at five percent (5%) of all seats in the patio seating area and in the general seating area. In addition to the route to the seating area, provide a clear space in front of each accessible seat of thirty inches by forty-eight inches (30" by 48"). Accessible seating provides top of dining surface between twenty-eight inches and thirty-four inches (28" by 34") above the finished floor with clear space under the table which is thirty inches (30") wide minimum, twenty-seven inches (27") minimum clear space above the finished floor to the bottom of the table and a minimum of nineteen inches (19") deep before encountering any obstruction. See details and photographs in Section 8 of this report.*

32) *Identify accessible table seating with an ISA. See details and photographs in Section 8 of this report.*

33) *Maintain a clear route of travel to accessible table seating a minimum of thirty-six inches (36") wide. See details and photographs in Section 8 of this report.*

34) *Provide lowered counter/bar seating. Lowered counter/bar seating includes a sixty inch (60") long lowered section meeting the dimensions described above for accessible seating. See details and photographs in Section 8 of this report.*

| | |
|---|---|
| Code reference in this section is general and not in line with statements.<br><br><br><br>**CBC Ch.3** | **Site Information**<br>**Section 1**<br><br>a)  This is a single story freestanding Building.<br><br>b)  There is no off street parking. |



This restaurant is open to the public



This site adjoins the public way

| Code reference in this section is general and not in line with statements. | ### Site Entrance Signage<br>### Section 2 | |
|---|---|---|
| | a) All accessible paths shall be marked with directional signage. |  |
| **2013 CBC 11B-101.1** | b) Signage shall not be in path of travel. | |
| | c) Signs shall comply with the regulations issued by the Department of Justice and the Department of Transportation under the Americans with Disabilities Act. | Provide directional signage at non-accessible entrance doors directing persons to the accessible patio entrance |
| **2013 CBC 11B-216.6** | | |
| **1991 ADA 4.3** | |  |
| **2013 CBC 11B-703.7** | | |
| **2010 ADA 101.1** | | Install directional signage where the new accessible route of travel leaves the public sidewalk |



## Exterior Accessible Routes
## Section 3

| | |
|---|---|
| Code reference in this section is general and not in line with statements | |

**2013 CBC 11B-206.2**

**CBC 1127B.3**

**CBC 1127B.5**

**CBC 1133B.7**

**2010 ADA 406**

**2010 ADA 402**

**2010 ADA 403**

**2013 CBC 11B-302**

a) There shall be a compliant accessible route to all the accessible features and buildings on the same lot.

b) There shall be signs at every primary entrance and major junction in the accessible route directing persons toward the accessible entrance.

c) Curb ramps shall be provided at street crossings or where a pedestrian way crosses a curb.

d) The sidewalk or walking area shall be a minimum of forty-eight inches (48") wide.

e) If walk area is greater than two hundred feet (200'), it shall be provided with a sixty inch by sixty inch (60" by 60") wheelchair passing area not exceeding two-hundred foot (200') intervals.

f) For surfaces with less than six percent (6%) slope it shall be of medium salted type slip resistance finish.

g) For surfaces greater than six percent (6%) slope it shall be of slip resistance type finish.

h) The slopes of the accessible paths shall be maximum five percent (5%) or eight-point-three-three percent (8.33%) for ramps with maximum cross slopes of two percent (2%).

i) The accessible route shall be free from abrupt changes in level of more than one-quarter inch (¼"). **Note:** Accessible routes cannot have steps or stairs.

j) If there is a vertical level change along this route, a ramp shall be provided.

k) The ramp slope shall be less than eight-point-three-three percent (8.33%) and cross slope shall be less than two percent (2%).



Install a ramp from the public right of way to the new accessible entrance door landing



Provide a bottom ramp landing 72" minimum in length with no more then 2% slope in any direction

| | |
|---|---|
| **2013 CBC 11B-405** | l)  Handrails shall be provided on both sides of the ramp. |
| | m)  The ramp shall be a minimum of forty-eight inches (48") wide. |
| **2013 CBC 11B-303** | n)  The ramp rise shall be less than thirty inches (30") high or run less than thirty feet (30') in length between level landings. |
| **2013 CBC 11B-210** | o)  The landing length shall be a minimum of seventy-two inches (72") in length and width of the ramp at the bottom of the ramps. |
| **CBC 1133B.5** | p)  For ramps without handrails, the minimum length shall be sixty inches (60") long at the bottom of the ramps. |
| | q)  There shall be a minimum sixty inch (60") long landing at the top of the ramps. |
| **2013 CBC 11B-403** | r)  There shall be at least eighty inches (80") of clear headroom along the accessible route. |
| | s)  Cane detection shall be provided for items that protrude more than four inches (4") into the accessible route. |



Provide a top ramp landing 60" minimum in length
with no more then 2% slope in any direction



Provide handrails on fence side of the ramp with the top of the gripping
surface between 33" – 36" above the finished surface; Provide a 2" minimum
Curb or barrier on the fence side of the ramp



Modify changes in level to not exceed ½" maximum, beveled between ¼" and ½" at 1:2



Provide a 44" wide route with maximum 2% cross slope



Provide a 44" wide route with maximum 2% cross slope



Maximum vertical rise          Maximum vertical rise with slope          Carpet Tile Thickness



Grate Spacing



Grate Placement

| SLOPE | MAXIMUM RISE | MAXIMUM LENGTH |
|-------|--------------|----------------|
| 1:12 | 30 inches (762 mm) | 30 feet (9144 mm) |
| 1:13 | 30 inches (762 mm) | 32.5 feet (9906 mm) |
| 1:14 | 30 inches (762 mm) | 35 feet (10668 mm)) |
| 1:15 | 30 inches (762 mm) | 37.5 feet (11430 mm) |
| 1:16 | 30 inches (762 mm) | 40 feet (12192 mm) |
| 1:17 | 30 inches (762 mm) | 42.5 feet (12954 mm) |
| 1:18 | 30 inches (762 mm) | 45 feet (13716 mm) |
| 1:9 | 30 inches (762 mm) | 47.5 (14478 mm) |



(a) RAMP WITH INTERMEDIATE SWITCH BACK LANDING



FIGURE 11B-27—RAMPS AND SIDEWALKS







**Sides of Curb Ramps**
**Flared Sides**

Note: If X is less than forty-eight inches (48"), then the slope of the flared side shall not exceed eight-point-three-three percent (8.33%).

If the landing depth at the top of a curb ramp is less than forty-eight inches (48"), then the slope of the flared side shall not exceed eight-point-three-three percent (8.33%).

Curb ramps shall not be less than forty-eight inches (48") wide with truncated domes at the bottom flat area thirty-six inches (36") in the direction of travel full width of ramp landing.

Curb ramps shall be a minimum of forty-eight inches (48") wide.



**Measurement of Curb Ramp Slopes**

The ramp slope is a ratio equal to the vertical rise divided by the horizontal run. The adjoining slope at walk or street shall not exceed five percent (5%).



**Sides of Curb Ramps**
**Returned Curb**

If X is less than forty-eight inches (48"), then the slope of the flared side shall not exceed eight-point-three-three percent (8.33%). Curb ramps shall not be less than forty-eight inches (48") wide with truncated domes at the bottom flat area thirty-six inches (36") in the direction of travel full width of ramp landing.

Curb ramps shall not be less than forty-eight inches (48") wide with truncated domes at the bottom flat area thirty-six inches (36") in the direction of travel full width of ramp landing.

| Code reference in this section is general and not in line with statements | |
|---|---|

## Accessible Doors
### Section 4

a) The doors shall be a minimum of three feet (3') in width and six feet, eight inches (6'8") high with a minimum thirty-two inch (32") clear width when open at a ninety degree (90˚) angle.



**2013 CBC 11B-404**

**CBC 1133B.2**

b) The doors shall have a sixty inch by sixty inch (60" by 60") clear door landing slope less than two percent (2%) in any direction and provide a minimum twenty-four inch (24") strike side clearance for exterior doors and eighteen inch (18") strike side clearance for interior doors.

**2010 ADA 404**

c) The door thresholds shall be no greater than one-half inch (½") high. Maximum vertical rise one-quarter inch (¼").

**CBC 1133B.2**

d) The door hand-activated hardware shall be centered between thirty-four inches and forty-eight inches (34" – 48") above the floor.

**CBC 1133B.2**

e) The door hardware shape shall be easy to grasp with no pinching or twisting of the wrist.

**CBC 1133B.2**

f) The bottom of the door shall have a ten inch (10") kick plate or have a have smooth, uninterrupted surface that allows the door to be opened by a wheelchair footrest without creating a trap or hazardous condition.

**Note:** It is our understanding that the gate to the patio seating area that serves and the accessible entrance remains open during business hours. The gate does not require customers to operate or manipulate the gate therefore no evaluation of the gate or accompanying hardware where evaluated.

### Accessible Patio Entrance



Provide International Symbol of Accessibility (ISA) signage on the fence adjacent to the left side of the accessible patio entrance area and directional signage at the non-accessible entrance door providing direction to the accessible entrance

| | | **Accessible Building Entrance** |
|---|---|---|
| **CBC 1133B.2** | g) Braille "EXIT" signage shall be provided on the strike side or right side of all exit doors mounted at forty-eight inches (48") minimum to sixty inches (60") maximum to bottom of Braille and raised characters. |  |
| **1984 CSAS 2-3304** | h) The doors shall require five pounds (5 lbs.) or less of force to open. | |
| | i) If door has a closer, the sweep period shall be at least five (5) seconds from an open position of ninety degrees (90°) to a position of twelve degrees (12°) from the latch. | |
| **1991 ADA 4.13** | j) The clear floor space on the push side of the doors shall be a minimum of forty-eight inches (48") deep. | Provide a 60" by 60" clear exterior door landing that extends 24" minimum beyond the strike side of the door with 2% maximum slope in any direction, provide a transition from the patio seating surface to the new door landing |
| **CBC 1133B.2** | k) The clear floor space on the pull side of the doors shall be no greater than a two percent (2%) slope and be a minimum of sixty inches (60") deep with a twenty-four inch (24") strike side for exterior doors and eighteen inches (18") minimum for interior doors. |  |
| | l) Directional signage shall be provided at each inaccessible entrance providing direction to the accessible entrance. | |
| **1984 CSAS 2-3304 (e)** | m) If automatic doors are provided, the proper warning signs shall be provided as well. | Provide 80" minimum vertical clearance |



Relocate door hardware to be centered between 34" – 44" above the finished floor, provide door hardware the does not require tight grasping, pinching, or twisting of the wrist to operate



Relocate extra chairs and high chairs to allow restroom door to open to 90°



NOTE: x = 12 in (305 mm) if door has both a closer and latch.

(a)
**Front Approaches — Swinging Doors**

NOTE: x = 36 in (915 mm) minimum if y = 60 in (1525 mm); x = 42 in (1065 mm) minimum if y = 54 in (1370 mm).

NOTE: y = 48 in (1220 mm) minimum if door has both a latch and closer.

(b)
**Hinge Side Approaches — Swinging Doors**

NOTE: y = 54 in (1370 mm) minimum if door has closer.

NOTE: y = 48 in (1220 mm) minimum if door has closer.

(c)
**Latch Side Approaches — Swinging Doors**

NOTE: All doors in alcoves shall comply with the clearances for front approaches.



Provide a minimum of thirty-two inches (32") clear opening or passage width of thirty-two inches (32") minimum wide by twenty-four inches (24") maximum length.



Doors that swing in series shall have a minimum of forty-eight inches (48") between doors.



( a ) PULL SIDE (INTERIOR DOOR)





Automatic door signage shall be posted on interior and exterior of both sides of automatic doors. Signs shall be yellow with black letters.

| Code reference in this section is general and not in line with statements. | Interior Routes |
|---|---|

## Interior Routes
### Section 5

**CBC 1133B.8**

**1991 ADA 4.4**

**2010 ADA403**

**2013 CBC 11B-404**

**1991 ADA 4.2.4**

**2013 CBC 11B-403**

**CBC 1124B.2**

a) The accessible route shall be a minimum of thirty-six inches (36") wide for less than fifty (50) occupants and a minimum of forty-four inches (44") wide for fifty or more (50+) occupants or where servicing both sides of egress aisle (between fixed objects) from the accessible entrance to all rooms and counter/condiment area.



b) There shall be at least eighty inches (80") of clear headroom along the accessible route.

c) The accessible route to rooms and areas shall be clear and unobstructed.

d) Changes in elevations shall be provided with compliant ramps or lifts for stairs.

e) Emergency devices shall be on an accessible route.

f) A sixty inch (60") clear wheelchair area shall be provided.



Rearrange tables to provide a minimum 44" wide route throughout the interior seating area



NOTE: Dimensions shown apply when x < 48 in (1220 mm).

protect shaded
area from
cross-traffic

CANE
DETECTION
AREA

cane range



greater than **12**
305

Plan

greater than **12**
305

Elevation

80" MIN.

## Accessible Counters & Reach Ranges
### Section 6

| | |
|---|---|
| Code reference in this section is general and not in line with statements.<br><br>**CBC 1117B.6.2**<br><br>**1991 ADA 4.1 & 4.6**<br><br>**CBC 1122B.5**<br><br>**2010 ADA 403**<br><br>**CBC 1133B.5.8**<br><br>**CBC 1126B & 1118B.4 1118B.5, 1118B.6**<br><br>**1984 CSAS 2-522(f)** | |

a)  The service counters shall be on an accessible route.

b)  A service counter shall be provided that is thirty-four inches (34") above the finished floor maximum by thirty-six inches (36") long minimum.

c)  There shall be a clear unobstructed accessible path and clear floor area at the service counter area.

d)  Objects with their leading edge between twenty-seven inches (27") and eighty inches (80") shall not protrude more than four inches (4") into the accessible route.

e)  All vending machine controls shall be at forty-eight inches (48") maximum height.

f)  There shall be a clear thirty inch by forty-eight inch (30" by 48") space in front of the counter.

g)  Fifty percent (50%) of tray slides shall be at thirty-four inches (34") maximum height at the service area. See Figure 53, below.



**Fig. 53**
**Food Service Lines**



Provide a minimum 36" long counter at the cashier counter 34" high maximum



Provide a clear unobstructed path and clear floor area that is 30" by 48" in front of the lowered service counter

| | |
|---|---|
| **2010 ADA 904** | *"Food service aisles. Food service aisles shall be a minimum of thirty-six inches (36") of clear width with a preferred width of forty-two inches (42") where passage of stopped wheelchairs by pedestrians is desired. Tray slides shall be mounted no higher than thirty-four inches (34") above the floor as shown in Figure 53."*<br><br>h) At least fifty percent (50%) of each type of item shall be within reach ranges.<br><br>**CBC 1104B.5**<br>**"If self-service shelves are provided, at least fifty percent (50%) of each type must be within the reach ranges in Sections 1118B.5 and 1118B.6."** |  |
| **CBC 1104B.5** |   |
| **1984 CSAS 2-522(f)** | |

Provide proper reach ranges at all dispensers or vending controls of 48" above finished floor if new since March 15, 2012 or if only forward approach and 54" maximum above finished floor if not changed since March 15, 2012 and has parallel approach, if dispenser is no more than 10" from front of counter; at least 50% of each type of item shall be within reach range



Fig. 53
Food Service Lines

(a) 60 INCHES DIAMETER SPACE

(b) T-SHAPED SPACE FOR 180° TURNS

THESE DIAGRAMS ILLUSTRATE THE SPECIFIC REQUIREMENTS
OF THESE REGULATIONS AND ARE INTENDED ONLY AS AN AID
FOR BUILDING DESIGN AND CONSTRUCTION.

FIGURE 11B-12—WHEELCHAIR TURNING SPACE

**2010 ADA Standards 904.4 Sales and Service Counters.** Sales counters and service counters shall comply with 904.4.1 or 904.4.2. The accessible portion of the counter top shall extend the same depth as the sales or service counter top.

**EXCEPTION:** In alterations, when the provision of a counter complying with 904.4 would result in a reduction of the number of existing counters at work stations or a reduction of the number of existing mail boxes, the counter shall be permitted to have a portion which is twenty-four inches (24") long minimum complying with 904.4.1 provided that the required clear floor or ground space is centered on the accessible length of the counter.



**Figure 904.4 (Exception) Alteration of Sales and Service Counters**

**904.4.1 Parallel Approach.** A portion of the counter surface that is thirty-six inches (36") long minimum and thirty-six inches (36") high maximum above the finish floor shall be provided. A clear floor or ground space complying with 305 shall be positioned for a parallel approach adjacent to the thirty-six inch (36") minimum length of counter.

**EXCEPTION:** Where the provided counter surface is less than thirty-six inches (36") long, the entire counter surface shall be thirty-six inches (36") high maximum above the finish floor.

**2010 CBC Section 1122B.5 Sales and Service Counters, Teller Windows, and Information Counters.** In department stores and miscellaneous retail stores where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one (1) of each type shall have a portion of the counter which is at least thirty-six inches (36") in length with a maximum height of thirty-four inches (34") above the finish floor and located on an accessible route complying with Section 1114B.1.2.

At ticketing counters, teller stations in a bank, registration counters in hotels and motels, box office ticket counters, and other counters that may not have a cash register but at which goods or services are sold or distributed, a portion of the main counter which is a minimum of thirty-six inches (36") in length shall be provided with a maximum height of thirty-four inches (34").

**Exception:** In existing buildings where it is determined that providing an accessible counter would create an unreasonable hardship, equivalent facilitation may consist of one of the following:

1.    An auxiliary counter, in close proximity to the main counter, meeting these requirements may be provided.

2.    Provision of a folding shelf attached to the main counter on which an individual with disabilities can write.



**Fig. 46**
**Space Requirements for Wheelchair**
**Seating Spaces in Series**

(a) Forward or Rear Access

(b) Side Access

NOTE: x ≤ 24 in (610 mm).

NOTE: x ≤ 15 in (380 mm).

NOTE: If x > 24 in (610 mm), then an additional maneuvering clearance of 6 in (150 mm) shall be provided as shown.

NOTE: If x > 15 in (380 mm), then an additional maneuvering clearance of 12 in (305 mm) shall be provided as shown.



The maximum level forward reach over an obstruction with knee space below is twenty-five inches (25"). When the obstruction is less than twenty inches (20") deep, the maximum high forward reach is forty-six inches (46"). When the obstruction projects twenty inches to twenty-four inches (20" - 24"), the maximum high forward reach is forty-four inches (44").



The height of the obstruction shall be thirty-four inches (34") maximum and the depth of the obstruction shall be twenty-four inches (24") maximum. The high side reach shall be forty-eight inches (48") maximum for a reach depth of ten inches (10") maximum. Where the reach depth exceeds ten inches (10"), the high side reach shall be forty-six inches (46") maximum for a reach depth of twenty-four inches (24") maximum.



**Figure 306.2 Toe Clearance**

Knee and Toe clearance shall be thirty inches (30") wide minimum.



**Figure 306.3 Knee Clearance**

| Code reference in this section is general and not in line with statements | **Accessible Restroom Section 7** |
|---|---|
| | a) The doors into this area shall comply with door requirements. |
| | b) Informational signage directing persons to the accessible restrooms shall be compliant. |
| **1984 CSAS 2-511** | c) An accessible route that is a minimum of thirty-six inches (36”) wide for less than fifty (50) occupants or a minimum of forty-four inches (44”) wide for fifty or more (50+) occupants shall be provided. |
| **CBC 1117B.5** | d) Signage shall be provided to identify the space and shall be mounted on the wall on the latch side of the door and on the door at forty-eight inches (48”) minimum to sixty inches (60”) maximum to the bottom of the Braille and/or raised characters. |
| **1984 CSAS 2-3304** | e) The door sign shall be an equilateral triangle (or circle for unisex) one-quarter inch (¼”) thick with edges twelve inches (12”) long and a vertex pointing upward. |
| | f) The wall signs shall have sans-serif uppercase characters between five-eighths of an inch (⅝”) and two inches (2”) high. |
| **2010 ADA 603** | g) The wall sign mounting location shall be such that a person can approach to within three inches (3”) of the signage without encountering protruding objects or standing within the swing of the door. |
| | h) Both wall and door signs shall be of a color that distinctly contrasts with the color of the mounting surface. |
| **2010 ADA 601** | i) The wheelchair symbol shall be provided on the accessible signs. |
| | j) The signs shall be of a non-glare finish. |

**Note:** Current restroom configuration includes three load bearing walls making an expansion of the size of the restroom at least difficult, if not technically infeasible. The following recommended alterations are made to improve access to the maximum extent feasible.



Install door and wall mounted signage, remove curtain


Install toilet paper dispenser on side wall with dispenser located 7” – 9” to centerline from the front of the toilet, remove existing toilet paper stand

| 2010 ADA 604 | **Lavatories** |
|---|---|

a) The lavatory counter height shall be a maximum of thirty-four inches (34") above the floor surface.

b) Lavatories adjacent to a side wall or partition shall be provided a minimum of eighteen inches (18") of distance to the center of the fixture.

c) There shall be a clear floor space at least thirty inches by forty-eight inches (30" by 48") in front of the lavatory allowing for a forward approach.

d) The sink shall comply with the figure below.

**CBC 1115B.4**



**CBC 1115B.4**

Knee clearance required underneath the lavatory: twenty-seven inches (27") minimum from the floor to the underside of the lavatory which extends eight inches (8") minimum measured from the front edge underneath the lavatory back towards the wall. If a minimum nine inches (9") of toe clearance is provided, a maximum of six inches (6") of the forty-eight inches (48") of clear floor space required at the fixture may extend into the toe space.

e) Hot water drainpipes and sharp objects under lavatory shall be insulated or covered to avoid contact.



Install rear grab bar to extend a minimum of 42" from the side wall; to begin within 6" of the side wall with a minimum 1½" gap between the grab bar and the toilet; the top of the surface of the rear grab bar shall be between 33" – 36" above the floor



Install the side grab bar to extend a minimum of 54" from the rear wall and 24" beyond the front of the toilet, side grab bar to begin within 12" of the rear wall. Provide a minimum 1½" gap between the grab bar and the toilet paper dispenser

f)   The faucet shall be operated without tight grasping or twisting of the wrist.

g)   Paper towel dispensers and hand soaps shall be on an accessible route with operating parts within forty inches (40") above the finished floor.

### Toilet Requirements

a)   The top of the toilet seat height shall be seventeen inches to nineteen inches (17" – 19") from the floor.

b)   The centerline of the toilet shall be seventeen inches to eighteen inches (17" – 18") from the wall or partition.

c)   There shall be a minimum sixty inch (60") wide clear transfer area for the toilet and which is fifty-nine inches (59") minimum deep.

**CBC 1115B.4**

d)   The flush valve shall be located on the wide side of the toilet area.

e)   Grab bars shall be mounted in a horizontal position, thirty-three inches (33") minimum and thirty-six inches (36") maximum above the finished floor measured to the top of the gripping surface.

f)   Grab bars shall not rotate in their fittings.

g)   The edge of the side grab bar shall be placed within twelve inches (12") maximum from the back wall.

h)   The rear grab bar shall be placed within six inches (6") of the side wall.

i)   The side grab bar shall be a minimum of forty-two inches (42") long and extend fifty-four inches (54") beyond the back wall and a minimum of twenty-four inches (24") in front of the water closet and the back grab bar thirty-six inches (36") long and extend twenty-four inches (24") on the wide side of the toilet's centerline.



Replace toilet seat so top of new toilet seat is 17" minimum to 19" maximum above the floor



Existing lavatory will remain due to limited width restroom

| | |
|---|---|
| **1984 CSAS 2-11(a)8** | j) The toilet paper dispenser shall be located on the sidewall within seven inches and nine inches (7" – 9") of the front edge of the toilet seat and nineteen inches (19") above the finished floor.<br><br>**CBC 1115B.4**    k) Toilet seat cover dispensers and other items shall be on an accessible path and operable parts shall be located a maximum of forty inches (40") above the finished floor and provide the necessary thirty inch by forty-eight inch (30" by 48") clear floor space. |

j) The toilet paper dispenser shall be located on the sidewall within seven inches and nine inches (7" – 9") of the front edge of the toilet seat and nineteen inches (19") above the finished floor.

k) Toilet seat cover dispensers and other items shall be on an accessible path and operable parts shall be located a maximum of forty inches (40") above the finished floor and provide the necessary thirty inch by forty-eight inch (30" by 48") clear floor space.

l) The stall door shall provide a minimum clear opening of thirty-two inches (32") for a front opening door or a thirty-four inch (34") clear opening for a side opening door in toilet stalls.

m) The stall door shall be self-closing.

n) For side opening doors, the stall shall be arranged to allow sixty inches (60") wide by fifty-nine inches (59") deep from back wall to the opening.

o) For end opening doors, the stall shall be arranged to allow or sixty inches (60") wide by fifty-six inches (56") deep from the back wall to the opening.

p) There shall be a minimum thirty-two inch (32") wide clear space between the toilet and the side panel or wall for stalls.

q) The stile width shall be four inches (4") or less on the hinge side of the door.

r) An eighteen inch (18") wide by sixty inch (60") deep clear floor area shall be provided on the pull side of the door.

s) The door shall not swing into the required clear space.

t) There shall be forty-eight inches (48") in front of toilet or sixty inches (60") in front of toilet for side opening stall door.

**1984 CSAS 2-11(a)8**

**CBC 1115B.4**

**1991 ADA 4.16**

**CBC 1115B.3**

**1991 ADA 4.22**

**CBC 1115B.4**



Relocate paper towel dispenser so it is located 40" maximum above the finished floor to highest operable part; provide behind lavatory mirror with bottom of reflective surface at 40" maximum above the finished floor or install additional mirror at a different location with bottom of reflective surface 35" maximum above the finished surface

u) If six (6) or more stalls are provided, there shall be a stall with a minimum width of thirty-six inches (36"), with an out swinging door and parallel grab bars.

v) The interior surface shall be smooth, hard, and non-absorbent for the floor a minimum of five inches (5") up the wall, a minimum of twenty-four inches (24") on walls around toilet and a minimum of forty-eight inches (48") in front of toilet.

w) There shall be a sixty inch (60") clear diameter circle inside the restroom.

x) If stall is provided, the stall shall be sixty inches (60") wide and provide for sixty inches (60") clear floor space in front of toilet for side opening door.

y) If stall is provided, the stall shall be sixty inches (60") wide and provide for forty-eight inches (48") of clear floor space in front of toilet for end opening door.

z) The door hardware shall be between thirty-four inches and forty-four inches (34" – 44") to the centerline above the finished floor and operable without tight grasping or twisting of the wrist and with a closed fist on both sides of doors.

aa) If urinals are provided, the maximum height shall be seventeen inches (17") above the finished floor and the flush handle shall be forty-four inches (44") or less above the finished floor and mounted fourteen inches to seventeen inches (14" – 17") from the wall.



(a) 60 INCHES DIAMETER SPACE

(b) T–SHAPED SPACE FOR 180° TURNS

THESE DIAGRAMS ILLUSTRATE THE SPECIFIC REQUIREMENTS OF THESE REGULATIONS AND ARE INTENDED ONLY AS AN AID FOR BUILDING DESIGN AND CONSTRUCTION.

FIGURE 11B-12—WHEELCHAIR TURNING SPACE

SIDE WALL ELEVATION

REAR WALL ELEVATION



(a) wall hung type

(b) stall type





FIGURE 11B-1E—CLEARANCES AT WATER CLOSETS

**ADA 603.2.3 Door Swing**. Doors shall not swing into the clear floor space or clearance required for any fixture. Doors shall be permitted to swing into the required turning space.

EXCEPTIONS:

2. Where the toilet room or bathing room is for individual use and a clear floor space complying with 305.3 is provided within the room beyond the arc of the door swing, doors shall be permitted to swing into the clear floor space or clearance required for any fixture.





UNI-SEX TOILET ROOM SIGNAGE

TACTILE SIGN (BRAILE)

60"



CENTER OF DOOR

LATCH-SIDE OF DOOR

## Turning Space

### 60" Diameter circle or "T" turn
### (elements with knee/toe clearance can overlap)





**T-Turn: overlap limited
to one segment**







1969 Health and Safety Code Section 19955.5 effective June 1970 for privately funded facilities indicated, "When sanitary facilities are made available for the public, clients or employee's then … they shall be made available for the physically handicap". Based off the time of construction the restroom was required to comply with the minimum requirements of the 1961 ANSI Standards Section 5.6, 3.1, 3.2, and 3.3.

1975 Health and Safety Code Section 19955.  (a) The purpose of this part is to insure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code. For the purposes of this part "public accommodation or facilities" means a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers. As used in this section, "hospitals" includes, but is not limited to, hospitals, nursing homes, and convalescent homes.

When sanitary facilities are made available for the public, clients, or employees in such accommodations or facilities, they shall be made available for the physically handicapped. Any new requirements imposed by the amendments to this section enacted by the Legislature at its 1973-74 Regular Session shall only apply to public accommodations or facilities constructed on or after the effective date of the amendments.

19955.5.  All passenger vehicle service stations, shopping centers, offices of physicians and surgeons, and office buildings constructed in this state with private funds shall adhere to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code. As used in this section, "office building" means a structure wherein commercial activity or service is performed or a profession is practiced, or wherein any combination thereof is performed or practiced in all or the majority of the building or structure.

When sanitary facilities are made available for the public, clients, or employees in these stations, centers, or buildings, they shall be made available for persons with disabilities.

| Code reference in this section is general and not in line with statements | **Accessible Seating**<br>**Section 8** |
|---|---|
| **CBC 1104B.3**<br><br>**1994 CBC/CAR 3305A (I)**<br><br>**CBC 1122B.1**<br><br>**CBC 1133B.5**<br><br>**CBC 1104B.2**<br><br>**2010 ADA 903** | a) Five percent (5%) of the seating shall be accessible with proper signage and equally distributed to all areas of the facility.<br><br>b) There shall be a clear thirty inch by forty-eight inch (30" by 48") wheelchair space provided in the waiting area with proper identification.<br><br>c) There shall be a clear unobstructed accessible path and clear floor area at the accessible tables.<br><br>d) Objects with their leading edge between twenty-seven inches and eighty inches (27" – 80") shall not project more than four inches (4") into the accessible route.<br><br>e) There shall be a twenty-seven inch by thirty inch (27" by 30") wide by nineteen inch (19") deep clear area provided for the accessible seating as shown below.<br><br>f) If a bar is provided, there shall be a minimum sixty inch (60") wide bar area at a maximum thirty-four inches (34") high with proper knee clearance.<br><br>g) Assisted listening devices shall be available upon request and within fifty feet (50') of a service.<br><br>h) A clear floor or ground space shall be provided and positioned for parallel approach to a short end of the bench seat.<br><br>i) Benches shall be secured in place and have seats that are twenty inches (20") minimum to twenty-four inches (24") maximum in depth and forty-two inches (42") minimum in length.<br><br>j) Benches shall have back support that is forty-two inches (42") minimum in length and that extends from a point two inches (2") maximum above the seat to a point eighteen inches (18") minimum above the seat. |



Provide accessible seating at one of each type of table and at 5% of all seats in the bar area and in the general dining area; provide clear 30" by 48"space in front of each accessible seat of, Identify accessible table seating with an ISA



Provide accessible seating with top of table surface between 28" and 34" above the finished floor; clear space under the table of 30" width minimum, 27" minimum clear space above the finished floor to the bottom of the table that is a minimum of 19" deep before encountering any obstruction

**2010 ADA 306.3**

k) Benches shall have seats that are seventeen inches (17") minimum to nineteen inches (19") maximum above the floor or ground.

l) The surface of benches installed in wet locations shall be slip-resistant and not accumulate water.

Additional Clearance. Space extending greater than six inches (6") beyond the available knee clearance at nine inches (9") above the finish floor or ground shall not be considered toe clearance.

306.2.5 Width. Toe clearance shall be thirty inches (30") wide minimum.

**Figure 306.2 Toe Clearance**



306.3 Knee Clearance.

306.3.1 General. Space under an element between nine inches and twenty-seven inches (9" – 27") above the finish floor or ground shall be considered knee clearance and shall comply with 306.3.

306.3.2 Maximum Depth. Knee clearance shall extend twenty-five inches (25") maximum under an element at nine inches (9") above the finish floor or ground.



Maintain a clear route of travel to accessible table seating



Provide lowered counter seating area; lowered counter seating includes a 60" long; lowered section meeting the clear space dimensions described above for accessible seating

306.3.3 Minimum Required Depth. Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be eleven inches (11") deep minimum at nine inches (9") above the finish floor or ground, and eight inches (8") deep minimum at twenty-seven inches (27") above the finish floor or ground.

**Minimum Clearances for Seating and Tables**
**CBC Section 1122B**



Fig. 47
Size of Bench

Fig. 48
Bench Back Support

## Questions and Notes
## Section 10

## Questions and Notes